ORDERED.

Dated:  June 15, 2017

_____
Jerry A. Funk
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                              Case No..: 3:17-bk-256-JAF

SOUTHSIDE CHURCH OF CHRIST         Chapter 11
OF JACKSONVILLE, INC.,

    Debtor.
_____/

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case came before the Court upon Christopher Walker as Trustee for Bondholders' Motion to Dismiss Debtor's Voluntary Petition (Doc. 22) and Christopher Walker as Trustee for Bondholders' Motion for Relief from Automatic Stay (Doc. 21) (collectively, the "Motions"). The Court conducted a hearing on the Motions on May 18, 2017 and elected to take the matters under advisement.  Upon the evidence and the applicable law, the Court makes the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

On January 25, 2017, Debtor (the "Church") filed a petition under Chapter 11 of the Bankruptcy Code. On February 20, 2001, the Church executed and delivered a First Mortgage Trust Indenture (the "Mortgage") in the amount of $610,000.00 in favor of James C. Mize, Jr., (the "Trustee"), which gave the Trustee a security interest in certain real property owned by the Church (the "Property") together with all buildings, structures, additions, improvements, facilities, and fixtures located on the Property. (Ex. 10). The Trustee represented bondholders who loaned money to the Church.[1] Pursuant to the Mortgage, which had a ten year maturity date, the Church was to make payments of principal and interest as well as payments on the bonds as they came due. In 2003, the Church constructed a 17,000 square-foot building on the Property.

On July 20, 2007, the Trustee instituted a foreclosure action because the Church failed to make the payments due under the Mortgage. (Ex. 12). On February 20, 2011, the Church and the Trustee entered into an extension agreement (the "Extension") pursuant to which the maturity date under the Mortgage was extended to February 20, 2014. (Id.) Additionally, the Church was required to make monthly payments of $8,000.00 beginning in March 2011 and continuing through January 2014. (Id.) The Church defaulted under the Extension and has not made a payment on the Mortgage since December 2015. Moreover, the Property is not insured.

In February 2016, Christopher Walker was named the successor trustee to the bondholders (the "Successor Trustee"). In November 2016, the Successor Trustee initiated a foreclosure action as to the Property (the "Foreclosure Case"). Approximately five days before a

---

[1] There are 32 bondholders, most of whom are members of the church. The bondholders are individual rather than institutional investors.

scheduled show-cause hearing in the Foreclosure Case at which the Successor Trustee expected the court to enter a final foreclosure judgment, the Church filed this petition.

The Church's sole source of income is from the collection of offerings. The Church collects approximately $8,500.00 per month in offerings. The Church pays a number of expenses for its pastor, Harold Rollinson, including $1,700.00 per month for rent, $200.00 per month for electricity, $100.00 per month for water, $425.00 per month for a car payment, and $300.00-$400.00 per month for gas. Mr. Rollinson is the Church's only employee.

Mr. Rollinson testified that his previous wife, who was also a pastor and who oversaw the Church's daycare center, became ill in 2008 and died in 2010. As a result, both Mr. Rollinson and the congregation fell into a deep state of grief which resulted in the Church losing members. Moreover, the daycare closed, resulting in additional lost revenue.

In 2012, Mr. Rollinson married Dwann Holmes Rollinson. Mrs. Rollinson is one of the Church's lead pastors and has a number of duties including marketing media, church growth, pastoral work, visiting congregants in the hospital, and generally attending to the needs of the ministry.

In order to fund its reorganization, the Church intends to open another daycare center, which it expects to open as early as September 2017 but no later than January 2018. The Church is presently attempting to obtain licensing and is also looking for a director and teachers for the daycare center. Additionally, the Church will offer a six week dance camp this summer at which it expects 50-75 attendees per week at a cost of $125.00 per attendee. Finally, the Church has launched a fundraising campaign with a goal of raising $500,000.00 by the summer of 2018. The Church's hope is that 100 families will each donate $5,000.00. Mrs. Rollinson testified that

the congregation is excited about "pulling together as one" in order to effectuate a successful reorganization.

The Property was appraised at $1.025 million by the Successor Trustee's appraiser as of August 4, 2016. (Ex. 1 at p. 65). Debtor valued the Property at $1.329 million on its bankruptcy schedules. (Ex. 4). Debtor based this value on the Duval County Property Appraiser's valuation. The amount of the Successor Trustee's claim as of the date of the filing was $1.198 million. While the Court makes no definitive determination of the value of the Property at this point, it appears to the Court that the value of the Property exceeds the amount owed to the Successor Trustee.

According to the Church's bankruptcy schedules, Church Mortgage and Loan Corporation holds a second mortgage on the Property in the amount of $200,000.00. The schedules also indicate that the Church owes $1,250.00 to unsecured creditors.

## Conclusions of Law

### Dismissal of the Case

The Successor Trustee seeks to have the case dismissed pursuant to 11 U.S.C. § 1112 on the basis that it was filed in bad faith. Section 1112(b)(1) provides in relevant part: "Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause …" The filing of a Chapter 11 case in bad faith constitutes cause. In re Phoenix Picadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988). Although there is no particular test for determining whether a debtor has filed a petition in bad faith, courts may consider factors which evidence "an intent to abuse the judicial process and the purposes of the reorganization provisions" or, in

4

particular, factors which evidence that the petition was filed "to delay or frustrate the legitimate efforts of secured creditors to enforce their rights." Id. (quoting Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.), 749 F.2d 670, 674 (11th Cir, 1984)). In Phoenix Picadilly, the Eleventh Circuit affirmed the district court's decision affirming the bankruptcy court's dismissal of a case for cause pursuant to § 1112(b). In doing so, the Eleventh Circuit noted the presence of the following circumstantial factors previously identified by courts as evidence of a bad faith filing:

(i) the debtor has only one asset in which it does not hold legal title;
(ii) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors;
(iii) the debtor has few employees;
(iv) the property is the subject of a foreclosure action as a result of arrearages on the debt;
(v) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in a pending state court action; and
(vi) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights.

Id. at 1394. The factors are guideposts rather than a rigid standard for determining bad faith. In re Stafford Rhodes, LLC, 2012 WL 5439041 at *3 (M.D. Ga. Nov. 7, 2012). A court has broad discretion to evaluate the totality of the circumstances in each case and to determine whether those circumstances indicate a petition was filed in bad faith. See Singer Furniture Acquisition Corp. v. SSMC Inc., N.V. (In re Singer Furniture Acquisition Corp.), 254 B.R. 46, 51 (M.D. Fla. 2000).

The Court recognizes that almost all of the factors are present in the instant case. The Church has only one asset, the Property, which is the subject of a foreclosure action. The Church has one employee, Mr. Robinson. The Church owes a minimal amount to unsecured creditors, whose claims are small in relation to the claims of the Successor Trustee and Church Mortgage

and Loan Corporation. Finally, the Church filed this petition less than a week before a scheduled show cause hearing in the Foreclosure Case. Despite the presence of the above factors, the Court does not find that the Church filed this case in bad faith. First, "there is nothing inherently improper for a debtor with one asset to attempt to reorganize its affairs under the … Bankruptcy Code." In re Harco Co. of Jacksonville, LLC, 331 B.R. 453, 456 (Bankr. M.D. Fla. 2005). Additionally, "[i]f the Court were to consider every bankruptcy filed for the purpose of taking advantage of the automatic stay as evidence of a bad faith filing, the protection offered by the automatic stay would be meaningless." Id. (citing Jacksonville Riverfront Dev., Ltd. 215 B.R. 239, 244 (Bankr. M.D. Fla. 1997)).

The Court finds that the Church filed this bankruptcy case in a sincere and earnest attempt to reorganize. While the bases of the Church's reorganization efforts are highly speculative and nowhere near fruition, the Court will afford the Church an opportunity to reorganize and will not dismiss the case at this juncture.

**Relief from the Automatic Stay**

Alternatively, the Successor Trustee seeks relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) or (d)(3), which respectively provide:

> d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> >
> > (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—[the debtor complies with certain requirements].

6

11 U.S.C. § 362(d). The Successor Trustee argues that cause exists because the petition was filed in bad faith. The filing of a bankruptcy petition in bad faith constitutes "cause" to lift the stay pursuant to § 362(d)(1). In re Phoenix Picadilly, Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988). However, having found that the petition was not filed in bad faith, the Court will not grant relief from the stay pursuant to § 362(d)(1) on this basis.

The Successor Trustee also argues entitlement to relief under § 362(d)(1) on the basis that he is not adequately protected because there is no equity in the Property and the Property is depreciating due to inadequate maintenance. The Successor Trustee appears to confuse the concepts of equity cushion and equity. Where the collateral securing the claim of a secured creditor seeking relief from the automatic stay exceeds that creditor's claim and any senior claims, an "equity cushion" exists. If the equity cushion is sufficient in amount to protect the secured creditor from any post-petition depreciation in the value of the collateral, the equity cushion is said to provide sufficient adequate protection to the secured creditor. See Pistole v. Mellor (In re Mellor), 734 F.2d 1396, 1400 (9th Cir. 1984). The determination of whether an equity cushion exists does not take into account junior liens. "Junior liens are disregarded for 'equity cushion' analysis because the secured creditor is entitled to adequate protection only as to its claim; it may not claim protection for others." In re Indian Palms Assocs, Ltd., 61 F.3d 197, 207 (3rd Cir. 1995) (quoting La Jolla Mort. Fund v. Rancho El Cajon Assocs., 18 B.R. 283, 289 (Bankr. S.D. Cal. 1982)). "In contrast, *all* liens are considered in calculating the equity retained by the debtor under section 362(d)(2),[2] because the equity analysis in that section focuses on 'the value, above all secured claims against the property, that can be realized from the sale of the

---

[2] Section 362(d)(2) provides that the Court shall lift the automatic stay "with respect to a stay of an act against property under subsection (a) of this section, if—(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization;"

property for the benefit of all unsecured creditors.'" Id. (quoting In re Mellor, 734 F.2d at 1400 n.2) (emphasis in original).

Here, because the Successor Trustee seeks relief under § 362(d)(1) but not (d)(2), the Court must only determine whether the Successor Trustee has an equity cushion in the Property As the Court noted, it appears that the value of the Property exceeds the amount owed to the Successor Trustee, thus providing an equity cushion. However, to the extent that an equity cushion exists, it is minimal and is not sufficient to protect against depreciation in the Property's value. Accordingly, the Court will require the Church to commence making adequate protection payments to the Successor Trustee and will detail those requirements in a separate order.

The Court turns to § 362(d)(3), which sets forth the circumstances under which the Court must grant relief from the automatic stay to a creditor whose claim is secured by an interest in single asset real estate. The Code defines single asset real estate and provides: "The term 'single asset real estate' means real property constituting a single property or project … which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto." 11 U.S.C. § 101(51B). "Real property is excluded from the definition [of § 101(51B)] if the debtor conducts a substantial business on the premises that is not merely incidental to the operation of the property." Collier Bankruptcy Manual § 101.51B. The instant case resembles a single asset real estate case because its purpose is to save the Property from a foreclosing creditor to whom the Church owes the vast majority of its debt. However, the Church conducts "substantial business" on the Property-that is the "business" of ministering to its congregation-other than operating the Property and the Property is thus not single asset real estate. See Bankrupting the Faith, 70 Mo. L. Rev. 719, 768-769 (2013).

Because the Property is not single asset real estate, the Successor Trustee is not entitled to relief from the automatic stay pursuant to § 362(d)(3).

## **Conclusion**

Because the Church did not file this bankruptcy case in bad faith, the Court will not dismiss the case pursuant to § 1112(d) or lift the automatic stay pursuant to § 362(d)(1). While the Successor Trustee appears to have an equity cushion, it is minimal and not sufficient to adequately protect against post-petition depreciation in the Property. The Court will, by separate order, require the Church to make adequate protection payments. Finally, because the Property is not single asset real estate, the Successor Trustee is not entitled to relief from the automatic stay under § 362(d)(3). The Court will enter separate orders consistent with these Findings of Fact and Conclusions of Law.

Attorney Gerald B. Stewart is directed to serve a copy of this Order upon interested parties within three days of the entry of the Order.